# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**SHARON FRIED,**

      Plaintiff,

vs.                                                  Civ. No. 04-273 ACT

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

      Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision filed August 26, 2004. Docket No. 11. The Commissioner of Social Security issued a final decision denying benefits and finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the Motion is well taken.

### I. PROCEDURAL RECORD

Plaintiff, Sharon Fried, applied for Supplemental Security Income Benefits and disability insurance benefits on July 12, 2000. Plaintiff alleged she became disabled on January 1, 1999 due to mental problems and Ehler-Danlos Syndrome.[1] Tr. 36-38, 56-59. The Administrative Law Judge ("ALJ") found that Plaintiff had the residual functional capacity ("RFC") for "substantially the full

---

[1] Ehlers-Danlos Syndrome is a severe connective tissue disease. <u>Hazard v. Shalala</u>, 44 F.3d 399 (6th Cir. 1995).

range of sedentary work." Tr. 348. Upon review the Appeals Council remanded to the ALJ for a new decision. The Order of Appeals Council dated October 22, 2002 directed the ALJ to:

> Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Rulings 85-16 and 96-8p).
>
> Compare the limitations and restrictions ultimately found with the physical and mental demands of the claimant's past relevant work pursuant to the adjudicative provisions set forth in Social Security Ruling 82-62. The Administrative Law Judge will determine whether evidence from a vocational expert is needed.

Tr. 359-60.

On remand, the ALJ conducted a hearing on June 12, 2003. Tr. 481. At the hearing the Plaintiff was represented by counsel. On August 8, 2003, the ALJ issued his decision and found that Plaintiff had the RFC to perform a significant range of light work with no running or climbing, and no exposure to hazards or dangerous machinery. Tr. 22-23. He also found that Plaintiff had a moderately limited ability for concentration, persistence, or pace. Based on vocational expert testimony the ALJ found that Plaintiff could work as a food assembler, kitchen helper, and fast food worker. Id. Thereafter, the Plaintiff filed a request for review. On January 22, 2004 the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. Tr. 7. The Plaintiff subsequently filed her Complaint for court review of the ALJ's decision on March 10, 2004.

Plaintiff was born on February 9, 1951. Tr. 56. Plaintiff has a master's degree and past relevant work experience as a counselor and waitress. Tr. 509-510.

## II. STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. See Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992); Glenn v. Shalala, 21 F.3d 983 (10th Cir. 1994). To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a mere scintilla, but it need not be a preponderance. Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992); Sisco v. United States Dep't. of Health & Human Servs., 10 F.3d 739, 741 (1993). A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision. See Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a clamant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. See 42 U.S.C. §423(d)(1)(A); see also Thompson, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520(a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. See Thompson, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show: 1) she is not engaged in substantial gainful employment; 2) she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities; 3) her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1; or 4) she is unable to perform work she had done in the past. 20 C.F.R.

§§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. Id.

### III.  MEDICAL HISTORY

The ALJ found that Plaintiff had the following "severe" impairments:  Ehlers-Danlos syndrome, bipolar affective disorder without psychotic features, a history of alcohol and cannabis dependence currently in sustained remission, and a narcissistic personality disorder. Tr. 18.

The record shows that on December 11, 2000 Plaintiff underwent a consultative evaluation by Thomas Kravitz, M.D. His examination found that Plaintiff's spine was non-tender and Plaintiff was able to walk on her toes and heels without significant problems. Pulses were mildly diminished in her lower extremities with dorsalis pedis pulses being somewhat diminished. The neurological examination showed Plaintiff's cranial nerves to be intact. There were not significant muscle strength or sensory deficits. Deep tendon reflexes were equal and symmetrical. The range of motion in her joints were within normal limits, although some of her joints, especially fingers, appeared to be hypermobile.[2] Tr. 237. Dr. Kravitz concluded that Plaintiff can perform occasional lifting up to 10 pounds; her standing and/or walking ability is limited to up to two hours in an eight hours workday; she can sit up to six hours in an eight hour workday; and her ability to do overhead reaching, handle objects, and perform fine manipulation is not limited. Id.

Raoul Berke, M.D., performed a psychiatric consultative evaluation on October 28, 2000. He found her mood to be within normal limits and she was oriented in all spheres. She was able to

---

[2]Hypermobile joints are joints that move beyond their normal range with little effort.  www.health.allrefer.com

4

accurately name the president, vice president, and governor. She rapidly and accurately subtracted serial 7's from 100 and the digit span was at least 7 forward and at least 5 reverse. She gave a very good abstract proverb interpretation. He concluded she had no psychiatric symptoms. Tr. 183.

Carl B. Adams, Ph.D performed a psychological evaluation in May of 2001. Tr. 396-402. He found that Plaintiff's GAF was at 60.[3] Tr. 401. He diagnosed her with Schizophrenia and Depressive Disorder. Id. He noted that the Plaintiff had been unable to maintain her life effectively for extended periods " homeless and living in her vehicle." Id. He further noted that antidepressant medication and mood stabilizers have not been effective in treating her depression, probably because the depression is secondary to a schizophrenia.

The record contains progress notes from the Santa Fe Mental Health Center for treatment in 2001. In May of 2001, it is reported that Plaintiff had a good mood and consistent affect. The overall assessment was that her condition had improved and she was stable. In June of 2001 Plaintiff appeared to be stable. In July of 2001 she was stable but in need of medications. In August of 2001 Plaintiff had a full affect and normal behavior. The overall assessment was that Plaintiff's condition was stable. Tr. 282-319.

In February of 2003, Plaintiff saw Robert G. Hillman, M.A., M.D. who gave Plaintiff a GAF of 90.[4] Tr. 394.

---

[3] A Global Assessment of Functioning ("GAF") of 60 indicates moderate symptoms or moderate difficulty in social, occupation, or school functioning. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., 2000)

[4] A GAF of 90 means absent or minimal symptoms, good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, and no more than everyday problems or concerns, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed., 2000).

## IV. DISCUSSION

Plaintiff alleges that the ALJ's finding regarding Plaintiff's RFC is not supported by the substantial evidence

Residual Functional Capacity.

The determination of Plaintiff's RFC is the extent to which Plaintiff's impairments and related symptoms affect her capacity to do work-related activities. Social Security Ruling ("SSR") 96-5p (1996 WL 374183); SSR 96-8p (1995 WL 374184). An evaluation of an RFC is a decision of what a Plaintiff can do despite her limitations. 20 C.F.R. §§404.1545(a); 416.945(a). In this matter, the ALJ determined that Plaintiff had an RFC for a significant range of light work that does not involve running, climbing, and working around hazards and dangerous machinery. Tr. 20 and 22. Light work is work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§404.1567(b); 416.967(b). In addition, the ALJ determined that Plaintiff had a moderately limited capacity for concentration, persistence, or pace. Tr. 20 and 22.

The rules and regulations require that in making an RFC assessment, the ALJ must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b),(c), and (d) of 20 C.F.R. §404.1545. SSR 96-8p, at *1. Thus, the ALJ must assess the "physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stopping or crouching.)." 20 C.F.R. § 404.1545(b). The SSR governing RFC assessments states that the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary

work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the record. SSR 96-8p. The adjudicator must also explain how any material inconsistencies or ambiguities in the case record were considered and resolved. Id. Furthermore, the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations). Id.

The Tenth Circuit has stressed the crucial nature of a Plaintiff's mental RFC. Cruse v. United States Dept. of Health & Human Servs., 49 F.3d 614, 619 (10th Cir. 1995) ("When the listing requirements for mental disorders are not met, but the impairment is nonetheless severe, 'the determination of mental [residual functional capacity] is crucial to the evaluation of a individual's capacity to engage in substantial gainful work activity.'")  When a mental impairment is alleged, the ALJ must assess the Plaintiff's mental RFC in accordance with 20 C.F.R. §416.945(c).  This section requires the ALJ to assess the Plaintiff's mental abilities of "understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting..." 20 C.F.R. §416.945(c).

A review of the ALJ's decision shows that the ALJ did not perform the proper physical or mental RFC assessment. Dr. Kravitz' assessment limits Plaintiff to sedentary work. 20 C.F.R. § 404.1567(a). The ALJ discredits this evaluation because it was a one-time evaluation, inconsistent with the record as a whole, and was based on Plaintiff's subjective complaints. Tr. 19. It is unclear as to what evidence of Plaintiff's functional capabilities and limitations the ALJ relies on in finding that Plaintiff can perform a significant range of light work.  There is no positive evidence to support

the ALJ's RFC finding.  Adkins v. Barnhart, 2003 WL 22413920 (10th Cir. 2003).

As discussed above, Dr. Berke, performed a consultative psychiatric evaluation of the Plaintiff and diagnosed her with bipolar disorder, ADHD, and alcohol dependence in remission.  Tr. 181-184. Subsequently he assess Plaintiff as being "markedly limited" in 1) ability to understand and remember detailed or complex instructions, 2) ability to attend and concentrate and 3) ability to interact with the public.  Tr. 160-161.  He also assessed Plaintiff as "moderately limited" in her ability to understand and remember very short and simple instructions, to carry out instructions, to work without supervision, and to interact with co-workers and supervisors.  Tr. 160-161.  The ALJ disregarded Dr. Berke's evaluation stating that is was internally inconsistent and not supported by the general evidence in the record because Plaintiff was doing well on medication and because she was not taking mediation at the time of the hearing.  Tr. 19.  The Court does not find Dr. Berke's report so internally inconsistent that it should be disregarded completely.  The Court further notes that Dr. Berke stated in his report that the standard of care was to avoid the use of antidepressant medications in patients with a diagnosis of bipolar disorder.  Tr. 183.

The only reference the ALJ made to Dr. Adams' evaluation was his assessment of Plaintiff's GAF at 60.  Tr. 20.  He did not address the rest of Dr. Adam's report.  Clearly, the ALJ did not follow SSR 96-8p which states in part:

> *Medical opinions*.  The RFC assessment must always consider and address medical source opinions. If the RFC conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

Finally, the Court notes that in Defendant's response brief, the Commissioner attempts to provide the analysis missing in the decision of the ALJ.  This approach has been rejected by the Tenth

Circuit.  Allen v. Barnhart, 357 F.3d 1140 (10th Cir. 2004).  A decision must be evaluated solely on the reason and analysis in the decision.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Robbins v. Halter, 2001 U.S. Dist. LEXIS 3592 (D. Kan. 2001).  As the ALJ failed to apply the correct legal standards, this matter will be remanded.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision is granted for proceedings consistent with this memorandum opinion and order.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**
**(sitting by designation)**